[No. B202085. Second Dist., Div. One. Dec. 8, 2008.]

JOSEPHINE LARNER, Plaintiff and Appellant, v.
LOS ANGELES DOCTORS HOSPITAL ASSOCIATES, LP, Defendant and
Respondent.

## Counsel

Initiative Legal Group, Mark Yablonovich, Marc Primo, Robert E. Byrnes and Rebecca Labat for Plaintiff and Appellant.

Fisher, Sparks, Grayson & Wolfe, Jerry R. Sparks, David R. Fisher; Greines, Martin, Stein & Richland, Robert A. Olson and Alana H. Rotter for Defendant and Respondent.

## Opinion

**WEISBERG, J.**[*]—Josephine Larner, a nurse, sued her former hospital employer for violation of overtime laws, purporting to represent a class of current and former nonexempt employees. The trial court granted in part the hospital's motion for summary adjudication of Larner's claim that the hospital failed to pay for overtime hours. Larner then amended her complaint, stating individual and class claims for failure to properly calculate overtime pay rates and for failure to keep accurate and complete wage records. The trial court denied Larner's motion for class certification. The parties entered into a settlement agreement and stipulated to the entry of final judgment in favor of the hospital. Larner appeals both the summary adjudication of her overtime hours claim and the denial of her certification motion. We dismiss the appeal as moot.

---

[*]Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## FACTS

Los Angeles Doctors Hospital Associates, LP, doing business as Los Angeles Metropolitan Medical Center (hereinafter LAMMC) employed Larner as a nurse. She regularly worked an alternative work schedule (AWS) of three 12-hour shifts per week (3/12), a total of 36 hours. She also worked some additional hours. Larner left her job in April 2003.

In September 2004, Larner sued LAMMC,[1] alleging that LAMMC violated overtime laws by failing to pay her and other 3/12 employees premium overtime wages (1.5 times the regular hourly rate) for hours 37 through 40 of the additional hours she worked in a week. She also alleged that LAMMC did not correctly calculate employees' overtime pay rates, and that LAMMC did not keep accurate and complete wage records. She brought the action on behalf of herself as well as "[a]ll current and former non-exempt hourly workers employed by Defendants . . . who failed to receive required premium overtime wages for the past four (4) years."

LAMMC moved for summary adjudication of Larner's claim that LAMMC failed to pay for hours of overtime. At a hearing on January 11, 2005, the trial court granted the motion in part, agreeing with LAMMC that subsection 3(B)(8) of Industrial Welfare Commission (IWC) wage order No. 5-2001 established that the hospital had a duty to pay overtime only after 3/12 employees had worked 40 hours in a week. The trial court gave Larner leave to amend. She filed a second amended complaint on May 5, 2006.

After a number of continuances, the court set a final trial date of July 11, 2007, on Larner's remaining claims. On May 23, 2007, Larner moved for certification of two separate classes, one for each of her two remaining issues: improper calculation of overtime rates and failure to keep accurate and complete wage records. The trial court denied the motion on June 20, 2007, because the motion was unduly tardy, because Larner's claims were not typical of the proposed classes, and because the class definitions were overbroad.

LAMMC and Larner prepared for a trial on Larner's individual claims but reached a settlement on July 9, 2007, two days before the trial date. The parties then entered a stipulation for entry of final judgment based on the

---

[1] Larner's complaint named Pacific Health Corporation as the defendant. On March 14, 2005, the parties stipulated to the dismissal of Pacific Health Corporation and added LAMMC as a defendant.

settlement, and the trial court entered judgment for LAMMC on July 10, 2007. Larner appeals from the summary adjudication of her overtime hours claim and from the denial of her motion for class certification.

## DISCUSSION

As an initial matter, we must determine whether the settlement between the parties in the trial court renders Larner's appeal moot. LAMMC argues that the appeal is moot because, after Larner lost both her summary adjudication motion and her motion for class certification, she settled all her individual claims with LAMMC and stipulated to the entry of judgment in LAMMC's favor on the basis of the settlement. Larner responds that she specifically reserved her right to appeal both the summary adjudication of the overtime issue and the denial of her motion for class certification. The stipulation for entry of final judgment states that while "Larner and LAMMC have entered into a Settlement Agreement whereby the parties intend to settle and resolve all disputes," Larner "reserv[es] her right to seek appellate review of the trial court's order granting [LAMMC's] motion for summary adjudication as to allegations related to the Alternative Workweek Schedule . . . and Wage Order 5-2001, as well as appellate review of the trial court's denial of [Larner's] motion for class certification and related rulings on June 20, 2007, and LAMMC expressly reserv[es] all defenses to any such appeals." The judgment contains nearly identical language. Larner argues that because the parties expressly "carved out" these issues for appellate review, this appeal is not moot.

■ "Generally, courts decide only 'actual controversies' which will result in a judgment that offers relief to the parties. [Citations.] Thus, appellate courts as a rule will not render opinions on moot questions . . . . The policy behind this rule is that courts decide justiciable controversies and will normally not render advisory opinions. [Citations.] [¶] One such event occurring for which a reviewing court will dismiss an appeal is when the underlying claim is settled or compromised." (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178–1179 [49 Cal.Rptr.3d 825].) When a case has settled, dismissal of the appeal is the appropriate disposition because "settlement operates as a merger and [bar] as to all preexisting claims and those alleged in the lawsuit that have been resolved." (*Id.* at p. 1179, citing *Armstrong v. Sacramento Valley R. Co.* (1919) 179 Cal. 648, 651 [178 P. 516].) "The reason why an appeal is dismissed if the judgment is satisfied is because the satisfaction moots the issues on appeal. [Citation.] A prejudgment settlement has the same effect. It is decisive of the

rights of the parties and bars reopening the issues settled. Absent a fundamental defect the terms are binding on the parties. [Citation.] '. . . [T]he merits of the original controversy are no longer in issue where a compromise agreement is made in good faith and without fraud, duress or undue influence.' " (*A.L.L. Roofing & Bldg. Materials Corp. v. Community Bank* (1986) 182 Cal.App.3d 356, 359 [227 Cal.Rptr. 308] [dismissing appeal as moot where parties settled before entry of judgment].) Neither party challenges the validity of the settlement agreement, and thus the only question before us is whether the settlement moots Larner's appeal.

The joint stipulation acknowledges that Larner and LAMMC have settled "all" claims and disputes, but nevertheless purports to preserve Larner's right to appeal. The July 9 settlement agreement[2] similarly states, "It is the mutual intention of the Parties to forego a trial on the merits, and settle *all* claims, conditioned on Larner retaining all appellate options that presently exist and would have been available at the conclusion of trial. The Parties agree that Larner contends she possesses certain rights of appeal, irrespective of the outcome of a trial on the merits, whether favorable, in whole or in part, to either Larner or LAMMC. By this Agreement, therefore, it is the mutual

---

[2] In a request filed with her reply brief in this appeal, Larner asks that this court take judicial notice of two settlement agreements between Larner and LAMMC. LAMMC opposes the request. The agreement settling Larner's claims in this case is dated July 9, 2007. The other settlement agreement is dated January 12, 2007, and settled an earlier lawsuit Larner brought against LAMMC for wrongful termination. The parties did not ask the trial court to take judicial notice of the agreements, and as a result neither was before the trial court.

"In deciding the question raised by an appeal, a reviewing court will ordinarily look only to the record made in the trial court." (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325 [48 Cal.Rptr.2d 87, 906 P.2d 1242].) While we may take judicial notice of matters not before the trial court, we are not required to do so, especially when the matters should have been presented to the trial court for its consideration. (*Ibid.*; *Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1072–1073 [95 Cal.Rptr.2d 864].)

The settlement agreements were not part of the trial court record. But because LAMMC raises the issue of whether the settlements moot Larner's appeal, a review of the agreements is necessary to our decision. We therefore exercise our discretion to take judicial notice of the settlement agreements. (*Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 128, fn. 2 [50 Cal.Rptr.3d 135].)

Larner's request for judicial notice also includes documents related to the substance of the summary adjudication. Because we have concluded that the appeal of the summary adjudication is moot, those documents are not necessary to our decision, and we deny the request to take judicial notice of those documents. With her request for judicial notice, Larner also filed a "Supplemental Appendix of Critical Documents," containing the materials for which she sought judicial notice and a compilation of materials already in the record on appeal. We have granted Larner's request for judicial notice of the settlement agreements. We grant LAMMC's motion to strike the remainder of the supplemental appendix, as it is unnecessary to our decision.

intention of the Parties to replicate the appellate options that would be available to Larner had a trial on the merits been conducted." (Italics added.)[3]

The "mutual intention of the Parties" to preserve appeal, however, does not control whether this appeal is moot.[4] The parties' intent cannot compel this court to issue an advisory opinion on issues in which, after the settlement, Larner no longer retains any individual, personal stake. In general, "we cannot grant plaintiff any relief by reversing an order for claims that have been settled and compromised." (*Ebensteiner Co., Inc. v. Chadmar Group, supra*, 143 Cal.App.4th at p. 1180; see *Muccianti v. Willow Creek Care Center* (2003) 108 Cal.App.4th 13, 24 [133 Cal.Rptr.2d 1] [finding appeal moot where parties entered into settlement agreement after filing of notice of appeal].) We examine how this general rule applies in the context of Larner's class action.

A class representative's receipt of relief on all her individual claims does not necessarily extinguish the interests of the members of the class she purported to represent. "When a plaintiff sues on behalf of a class, he assumes a fiduciary obligation to the members of the class, surrendering any right to compromise the group action in return for an individual gain. Even if the named plaintiff receives all the benefits that he seeks in the complaint, such success does not divest him of the duty to continue the action for the benefit of others similarly situated." (*La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871 [97 Cal.Rptr. 849, 489 P.2d 1113].) "[A] defendant's grant of individual relief to the named plaintiffs in a class action does not, in itself, render those plaintiffs unfit per se to represent the class." (*Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582, 594 [200 Cal.Rptr. 38, 676 P.2d 1060].) In both *La Sala* and *Kagan*, the trial court dismissed a class action after the defendants offered relief to the named

---

[3] The July 9 agreement also provides, in language similar to that in the stipulation and the judgment, "Larner reserves all rights to appellate review of the trial court's order granting LAMMC's motion for summary adjudication as to allegations related to the Alternative Workweek Schedule . . . and Wage Order 5-2001. Larner also reserves all rights to appellate review of the trial court's ruling denying Larner's motion for class certifications on June 20, 2007, and any associated rulings, including but not limited to those concerning evidentiary objections. LAMMC expressly reserves all defenses to any such appeals." The January 12 agreement provides, "notwithstanding any release or waiver contained herein, nothing in this Agreement is intended to release or affect any claims asserted or brought by Larner in the Second Amended Complaint in the Class Action."

[4] That intention may be less than fully mutual, given the agreement's statement that "the [p]arties agree that Larner *contends* she possesses certain rights of appeal" (italics added), LAMMC's reservation of its defenses, and its assertion in its opposition brief that the appeal is moot.

plaintiffs and before the plaintiffs moved for class certification. The court reversed the dismissals, holding that the class actions could continue in the trial court.

■ A defendant's offer to settle, by waiving its right to enforce a complained-of clause in a contract against class representatives (*La Sala*), or by offering the named plaintiff reimbursement of fees the class action challenged as improperly deducted (*Kagan*), does not necessarily end the class action. Even after an offer of individual relief, the named plaintiff may retain an interest in proceeding on behalf of the other members of the class who are similarly situated. If the trial court concludes that the named plaintiff is no longer a suitable representative, the court should grant the plaintiff leave to amend the complaint to redefine the class, or add new class representatives, or both. (*La Sala v. American Sav. & Loan Assn., supra,* 5 Cal.3d at p. 872; see *Howard Gunty Profit Sharing Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 578 [105 Cal.Rptr.2d 896].) This rule prevents a prospective defendant from avoiding a class action by "picking off" prospective class action plaintiffs one by one, settling each individual claim in an attempt to disqualify the named plaintiff as a class representative. (*Kagan v. Gibraltar Sav. & Loan Assn., supra,* 35 Cal.3d at p. 593; *La Sala v. American Sav. & Loan Assn., supra,* 5 Cal.3d at p. 873; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2008) ¶ 14:41, p. 14-29 (rev. # 1, 2008).)

### I. *Summary adjudication of overtime claim*

When Larner "settled and compromised" all her individual claims against LAMMC, she had already lost her class claim that LAMMC failed to pay overtime for some of the additional hours worked. In granting LAMMC's motion for summary adjudication, the trial court concluded that subsection 3(B)(8) of IWC wage order No. 5-2001 established LAMMC's duty to pay overtime (so that Larner was not entitled to overtime pay for hours 37 through 40 of a week in which she worked more than the 36 hours provided for by her 3/12 schedule). When, more than two and one-half years later and after losing her class certification motion on different issues, Larner settled "all" claims in her case, she also released her overtime hours claim.

The general rule that settlement renders a claim moot applies to Larner's appeal of the grant of summary adjudication. Larner lost this issue on the merits. She had not moved to certify a class on this claim. The trial court resolved the issue on a substantive ground that would apply equally to deny

relief to any nonexempt worker on a 3/12 schedule, so the settlement cannot be viewed as "picking off" Larner as a named plaintiff on a valid class claim by offering a small settlement. (See *Wiesmueller v. Kosobucki* (7th Cir. 2008) 513 F.3d 784, 787 [question whether to certify class is moot where, before certification motion, " 'the ground on which the district court threw out the plaintiff's claims would apply equally to any other member of the class' "].) Rather than resisting settlement on this claim, Larner embraced it years later, after she lost her attempt to certify classes on other class claims in the trial court.[5] She would receive no individual relief even if we were to reverse the trial court's summary adjudication. We therefore conclude that Larner's settlement renders moot her appeal of the summary adjudication.[6]

## II. *Denial of class certification*

After the trial court granted summary adjudication on her overtime hours claim, Larner filed a second amended class action complaint stating wage claims which, unlike the overtime hours claim, the court did not address on the merits. Instead, the court denied her motion for class certification, and Larner then settled those additional wage claims. We separately address whether the settlement between Larner and LAMMC after the denial of class certification extinguishes all "actual controversy" on appeal as to the second amended complaint's class allegations.

### A. *California and federal class action law*

Our law concerning class actions "is comprised of a mixture of federal and state law: California law controls if it exists. Otherwise, ' "[i]n the absence of California authority, California courts may look to the Federal Rules of Civil Procedure (FRCP) and to the federal cases interpreting them . . . ." ' " (*In re BCBG Overtime Cases* (2008) 163 Cal.App.4th 1293, 1298 [78 Cal.Rptr.3d 257].) No California case addresses the question

---

[5] And, in fact, Larner settled after the identical argument regarding overtime hours was unsuccessfully advanced by another nurse plaintiff, represented by the same law firm as Larner, in *Singh v. Superior Court* (2006) 140 Cal.App.4th 387 [44 Cal.Rptr.3d 348]. Division Eight of this appellate district affirmed the trial court's summary adjudication that subsection 3(B)(8) of IWC wage order No. 5-2001 required overtime pay only after a 3/12 employee worked 40 hours in a week. There were no class allegations.

[6] We may decide not to apply the general rule of dismissal where a moot case poses an issue of broad public interest that is likely to recur, or where material questions of fact remain for determination. (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1006 [78 Cal.Rptr.2d 272].) Larner does not argue either exception, however, and neither applies in this case.

presented here: Is a named plaintiff's appeal moot following a denial of class certification, a voluntary settlement of all claims reserving the right to appeal, and a subsequent stipulated judgment? We therefore look to federal authority, which we may apply where consistent with California law and policy. (*La Sala v. American Sav. & Loan Assn., supra*, 5 Cal.3d at p. 872.)[7]

Both California and federal law favor class actions. "Courts long have acknowledged the importance of class actions . . . to prevent a failure of justice in our judicial system. [Citations.] ' "By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress . . . ." ' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 434–435 [97 Cal.Rptr.2d 179, 2 P.3d 27]; see *Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 339 [63 L.Ed.2d 427, 100 S.Ct. 1166, 1174] ["Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."].) Both state and federal courts urge careful management of class suits, to allow their maintenance only where there are substantial benefits to litigants and the courts. "While class actions are an important means to *prevent* a failure of justice in our judicial system, they also carry the potential to create injustice. (*Linder v. Thrifty Oil Co.*[, *supra*,] 23 Cal.4th 429, 435 . . . .) '[The] potential for misuse of the class action mechanism is obvious. Its benefits to class members are often nominal and symbolic, with persons other than class members becoming the chief beneficiaries.' (*Deposit Guaranty Nat. Bank v. Roper*[, *supra*,] 445 U.S. 326, 339 . . . .)" (*Howard Gunty Profit Sharing Plan v. Superior Court, supra*, 88 Cal.App.4th at p. 579.)

In *Roper* and its companion case, *United States Parole Comm'n v. Geraghty, supra*, 445 U.S. 388, the Supreme Court allowed named plaintiffs whose individual claims were mooted to appeal the previous denials of class

---

[7] A case is moot in federal court " 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome' " (*United States Parole Comm'n v. Geraghty* (1980) 445 U.S. 388, 396 [63 L.Ed.2d 479, 100 S.Ct. 1202]) so that the required "case or controversy" for jurisdiction under article III of the United States Constitution no longer exists. (See *Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 863 [167 P.2d 725], quoting *Mills v. Green* (1895) 159 U.S. 651, 653 [40 L.Ed. 293, 16 S.Ct. 132] [" 'The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect . . . . [W]hen, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.' "].)

certification. Geraghty, a prisoner denied parole, filed a class action challenging the federal parole guidelines. After the district court denied class certification and ruled against Geraghty on his individual claim, Geraghty appealed, but he was released from prison while the appeal was pending. Even though Geraghty's substantive claims were moot following his release, the Supreme Court agreed that his appeal was not moot because he had a separate "procedural . . . right to represent a class." (*Id.* at p. 402.)

In *Roper*, credit card holders brought a class action claiming they had been charged usurious finance charges. After the trial court denied their class certification motion, the bank tendered to each named plaintiff the maximum amount that each could have recovered. Although the plaintiffs declined to accept the tender, the district court entered judgment in the plaintiffs' favor over their objection, and dismissed the action. The named plaintiffs sought appellate review of the certification denial, and the court of appeals held that the forced tender did not moot the appeal. The Supreme Court agreed that the case was not moot, because even after full tender the plaintiffs retained a private interest in shifting a portion of their fees and costs to successful class litigants if the class eventually was certified and prevailed: "A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from any recovery." (*Deposit Guaranty Nat. Bank v. Roper, supra*, 445 U.S. at pp. 337–338, fn. 9.)

The Supreme Court emphasized in both cases that the named plaintiffs did not settle voluntarily, and in *Geraghty*, the court specifically reserved the issue in this case: "We intimate no view as to whether a named plaintiff who settles the individual claim after denial of class certification may, consistent with Art. III, appeal from the adverse ruling on class certification." (*United States Parole Comm'n v. Geraghty, supra*, 445 U.S. at p. 404, fn. 10.)

### B. *Mootness and voluntary settlement of all claims*

Federal courts of appeals have reached varying results in determining whether an appeal is moot following the denial of class certification and subsequent settlement by the parties, depending on the language of the settlement agreement.[8]

---

[8] The Ninth and Eleventh Circuit Courts of Appeals have held the named plaintiff cannot maintain an appeal when he stipulated to judgment without reserving the right to appeal any part of it, under the rule that consent to judgment, without reservation of the right to appeal on a particular claim, bars an appeal. In *Seidman v. City of Beverly Hills* (9th Cir. 1986) 785 F.2d 1447, without citing *Roper* or *Geraghty*, the Ninth Circuit concluded that after the plaintiff lost his motion for class certification, settled, and agreed " 'to dismiss with prejudice the *action*'

Following *Roper* and *Geraghty*, in class actions with facts similar to those in this case, federal courts of appeals have found the appeals moot. The Fourth Circuit held an appeal was moot even when the settlement agreement reserved the right to appeal the class certification ruling. This was because the settlement agreement relinquished " 'any and all' claims," which necessarily included any claims for attorney fees. (*Toms v. Allied Bond & Collection Agency, Inc.* (4th Cir. 1999) 179 F.3d 103, 105.) The court held that because the settlement agreement released all claims, the plaintiff released his interest in his individual claim and in shifting the costs of litigation to the class. "Without an interest in the litigation, no case or controversy remains. And without the anchor of an underlying case or controversy, any attempted reservation of [the class plaintiff's] right to appeal is simply without effect." (*Id.* at p. 106.)

In *Potter v. Norwest Mortg., Inc.* (8th Cir. 2003) 329 F.3d 608, the district court denied the named plaintiff's motion for class certification, and later granted summary judgment for the defendant on one issue. Shortly before trial on the remaining issues, the plaintiff signed a settlement agreement releasing his individual claims and purporting to preserve his right to appeal the order denying class certification. The defendant also agreed not to contest the appeal as moot, and the parties agreed they did not waive their right to recover attorney fees. The district court dismissed with prejudice. The court of appeals noted that the plaintiff settled voluntarily, and because "[p]arties cannot by agreement confer jurisdiction upon a federal court[,] . . . neither [the defendant's] promise not to challenge [the plaintiff's] appeal as moot nor the settlement agreement's provision reserving [the plaintiff's] right to appeal confer jurisdiction upon this court." (*Id.* at p. 611.) The policy consideration

itself" (original italics) while reserving the right to appeal, the appeal was barred not because of the settlement but because "[a] plaintiff may not appeal a voluntary dismissal because it is not an involuntary adverse judgment against him." (*Id.* at p. 1448.) The court noted that mootness would be the issue if the stipulation had merely dismissed the plaintiff's individual claims and if, after denying class certification, the court had entered an adverse judgment dismissing the entire action. (*Id.* at p. 1448.) The Eleventh Circuit followed *Seidman* in *Shores v. Sklar* (11th Cir. 1989) 885 F.2d 760, 763 ("in the absence of qualification, consent to judgment constitutes consent to the interlocutory order denying class certification").

The requisite "personal stake" remained on appeal when a class representative settled only individual claims and specifically reserved the claim of any putative class member or the representative's class claim, because this was "sufficient for [the plaintiff] to retain a personal stake in the class claim, including the interest in shifting attorney fees and other litigation costs." (*Richards v. Delta Air Lines, Inc.* (D.C. Cir. 2006) 372 U.S. App.D.C. 53 [453 F.3d 525, 529] ["Of course, a plaintiff who, in the settlement agreement, relinquishes 'any and all' of his claims, including class claims, or agrees to dismiss the entire 'action,' has ceded any interest he once had and can no longer appeal a denial of class certification."].) When a class plaintiff lost his motion for certification and then settled "the action," the appeal was moot because "we cannot presume that [the class plaintiff] intended to settle only his individual claims." (*Dugas v. Trans Union Corp.* (5th Cir. 1996) 99 F.3d 724, 728–729 [noting that the settlement "did not include a reservation of a right to appeal the certification ruling"].)

preventing defendants from "picking off" named plaintiffs did not apply in this case where the plaintiff voluntarily settled, and where the defendant agreed that the plaintiff reserved his right to appeal and agreed not to contest the appeal as moot. (*Id.* at pp. 612–613.)

The Eighth Circuit in *Potter* agreed with the Fourth Circuit in *Toms* that "a party must retain a continuing interest in the litigation in order to appeal a denial of class certification." (*Potter v. Norwest Mortg., Inc., supra,* 329 F.3d at p. 614.) "Because Potter failed to establish a clear interest in attorney fees, we cannot conclude Potter possesses a continuing personal stake in the litigation. Absent a continuing personal stake in the litigation, Potter fails to satisfy the case or controversy requirement of Article III."[9] (*Potter,* at p. 614.) The appeal was therefore moot. (See *Anderson v. CNH U.S. Pension Plan* (8th Cir. 2008) 515 F.3d 823, 827 [after denial of class certification, "the voluntary settlement reached by the named plaintiffs with both defendants leads us to conclude that the entire case is now moot" although agreement reserved right to appeal, because plaintiff did not establish a "continuing interest . . . in shifting costs and attorneys' fees to putative class members"].)

■ Here, plaintiff has a similar lack of continuing personal stake in this litigation. Larner brought a class action as a named plaintiff; the trial court granted summary adjudication on one issue and denied certification of the class as to others; and Larner voluntarily settled all her claims before trial. Larner does not assert on appeal that she reserved any right to shift attorney fees to other class members. She therefore retained no justiciable interest in the litigation.

■ California's interest in vindicating plaintiffs' rights through class actions includes preventing defendants from foisting unwanted settlements on named plaintiffs merely to "pick off" class representatives. (See *Kagan v. Gibraltar Sav. & Loan Assn., supra,* 35 Cal.3d at p. 593; *La Sala v. American Sav. & Loan Assn., supra,* 5 Cal.3d at p. 873.) But when a named plaintiff loses a motion to certify the class and then voluntarily settles all claims against the defendant, there is no similar danger that the settlement is merely for the purpose of avoiding legitimate class claims. Because Larner retains no continuing interest in the litigation, such as an interest in shifting attorney fees to class members, her appeal is without substance. Her express reservation of the right to appeal is therefore toothless, and this appeal is moot.

---

[9] Although the settlement agreement was not before the district or appeals court and the parties did not request judicial notice, the appeals court relied on the transcript of the settlement hearing to determine that there was no evidence that Potter reserved his right to recover attorney fees under the statute or federal class action rules. (*Potter v. Norwest Mortg., Inc., supra,* 329 F.3d at p. 614.)

## DISPOSITION

The appeal is dismissed as moot. Each party is to bear her/its own costs of appeal.

Mallano, P. J., and Rothschild, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 11, 2009, S169914.