[No. B199982. Second Dist., Div. Three. Apr. 16, 2009.]

FELICIA M. WATKINS et al., Plaintiffs and Appellants, v.
WACHOVIA CORPORATION et al., Defendants and Respondents.

## Counsel

Knapp, Peterson & Clarke and Stephen M. Harris for Plaintiffs and Appellants.

Reed Smith, Margaret M. Grignon, Michele J. Beilke and Zareh A. Jaltorossian for Defendants and Respondents.

**OPINION**

**CROSKEY, J.**—Plaintiffs and appellants Felicia M. Watkins and Patricia Brown are former employees of defendant and appellant Wachovia.[1] They brought a class action against Wachovia, seeking damages for unpaid overtime compensation, for themselves and a purported class of similarly situated workers. The trial court granted summary judgment in favor of Wachovia against Brown, on the basis that Brown had signed a release of all claims in exchange for enhanced benefits upon her termination from Wachovia. Thereafter, the court denied Watkins's motion for class certification. Subsequently, Watkins settled her *own* claims against Wachovia, but attempted to retain the right to appeal the denial of class certification in her representative capacity. We conclude summary judgment was appropriately granted with respect to Brown, and that Watkins no longer has standing to pursue this appeal. We therefore affirm the judgment against Brown and dismiss Watkins's appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Wachovia has 36 branches in California. Both Brown and Watkins were employed as "sales assistants,"[2] who assisted stockbrokers with client contact and numerous other tasks. Some of Wachovia's sales assistants were registered with the National Association of Securities Dealers (NASD). Registered sales assistants were authorized to perform additional tasks, which nonregistered sales assistants could not perform, such as directly placing trades for clients. Brown and Watkins were both nonregistered sales assistants; Brown worked at Wachovia's Newport Beach branch, while Watkins worked at the Woodland Hills branch.

On February 24, 2003, Watkins, alone, brought suit against Wachovia, alleging, among other things, causes of action for wrongful termination and a failure to pay overtime wages. She also brought a cause of action under Business and Professions Code section 17200 on behalf of "similarly situated members of the general public" asserting Labor Code violations, but she did not plead a class action at this time.

Class action allegations first appeared in Watkins's second amended complaint, filed December 8, 2003. In the interim, the United States Department of Labor had completed an investigation of Wachovia's Century City office, covering the period from May 1, 2000, to May 1, 2002. The Department of Labor had concluded that Wachovia's Century City branch had incorrectly

---

[1] We use "Wachovia" to refer to Wachovia Corporation, Wachovia Securities, LLC, and other related entities.

[2] "Sales Assistants" were also called "Account Administrators."

classified its sales assistants as exempt from overtime laws, when they were, in fact, nonexempt. Wachovia ultimately paid all 11 of its Century City sales assistants back wages for the period of the investigation. Wachovia also agreed to keep better records and pay overtime wages in the future.

Given this determination, Watkins amended her complaint to allege a class action on behalf of all Wachovia employees not paid overtime within four years of the date of her complaint, and specifically all such employees who were not paid overtime as a result of having been misclassified as exempt.[3] Watkins alleged that "it was Wachovia's policy not to pay overtime compensation."

Watkins's second amended complaint did not distinguish between registered and nonregistered employees of Wachovia. All registered individuals, as part of the registration process, sign an agreement to arbitrate all disputes with their employers via NASD arbitration. Therefore, Wachovia moved to compel NASD arbitration with respect to every registered member of the purported plaintiff class. Watkins opposed the motion on the basis that the NASD arbitration rules provide that class action claims are not subject to arbitration. The issue was thus whether (1) the arbitration agreement constituted a *waiver* of class action rights of registered employees, requiring them to arbitrate their claims individually; or (2) the exemption from NASD arbitration permitted registered employees to pursue class actions in court. At the time, the issue was an open one. The trial court in this case concluded that registered employees must arbitrate their claims on an individual basis, and therefore granted the motion to compel arbitration. Subsequently, it would be determined, in an appeal in a related case,[4] that this is not the proper result and that, in fact, registered employees may nonetheless pursue class actions against their employers in court. (*Clark v. First Union Securities,*

---

[3] During the first half of 2003, it appears that Wachovia reclassified several job titles—although possibly not sales assistant—from exempt to nonexempt, and sent checks to affected former and current employees for three years of back wages. Plaintiffs' counsel explained in opposition to a subsequent demurrer, "Watkins [does not seek] to represent exempt employees in order to obtain a determination that they are non-exempt. [Instead,] Watkins seeks to obtain additional overtime compensation on behalf of employees who have already been reclassified as non-exempt." In other words, plaintiffs' counsel was aware that many Wachovia employees had received three years of back wages when Wachovia voluntarily reclassified them; believing that a four-year statute of limitations governed in California, plaintiffs' counsel sought an additional year of back wages for these employees.

[4] In addition to the instant action, plaintiffs' counsel brought at least two other representative actions against Wachovia containing similar allegations, one involving plaintiff Jason Clark (*Clark v. First Union Securities Inc.* (Super. Ct. L.A. County, No. BC281734)) and one involving plaintiff Howard Schneider (*Schneider v. First Union Securities Inc.* (Super. Ct. L.A. County, No. BC282338)). Indeed, in both this case and the *Clark* case, the named plaintiff sought to represent a class of both registered and nonregistered employees, yet Clark himself was registered (an investment consultant candidate) while Watkins was not. This prompted the trial court in the *Clark* case to exercise its discretion to stay the claims of nonregistered

*Inc.* (2007) 153 Cal.App.4th 1595 [64 Cal.Rptr.3d 313].) However, that appellate opinion would not be filed until 2007. In this case, the trial court's order compelling arbitration had the practical effect of removing the registered employees from the case;[5] nonregistered employees could continue to pursue the action.

Discovery proceeded.[6] Further amended complaints were filed and challenged. Nearly simultaneously, Watkins filed her fifth amended complaint, which added Brown as another class representative, and a motion for class certification.[7] Although the class certification motion was filed in September 2005, it would not be heard until April 2007.

During this time, plaintiffs' counsel attempted to challenge the trial court's order compelling arbitration of the claims of the registered employees. At the hearing on one such challenge,[8] plaintiffs' counsel candidly conceded that he could not arbitrate the claims of any individual registered sales assistants because he did not represent any of them on an individual basis. Plaintiffs' counsel stated that (1) he possessed evidence that Wachovia had improperly denied its registered sales assistants overtime pay; (2) he wanted to pursue the class action on their behalf; but (3) he could not arbitrate their individual claims because none of them were willing to pursue such a claim. He stated, "You know, these [registered sales assistants] who [were] deposed, they don't want to pursue their own individual claims. They would be happy to be

---

employees in that action pending the resolution of those claims in the *Watkins* case, on the basis that the *Watkins* case presented the same issues with a more appropriate (i.e., nonregistered) plaintiff.

[5] Claims for injunctive relief on behalf of registered employees were stayed pending arbitration of their damages claims.

[6] When Watkins sought contact information for all of Wachovia's current and former employees, it was determined that a third party would give notice to those individuals and inquire if they wanted to be contacted by plaintiffs' counsel. The parties disputed whether the inquiry and subsequent discovery should be made on an opt-in basis (i.e., plaintiffs' counsel would be given the contact information of only those individuals who specifically consented to contact) or an opt-out basis (i.e., plaintiffs' counsel would be given the contact information of all individuals except those who specifically refused to consent to contact). The trial court selected an opt-in basis; Watkins challenges this ruling on appeal. As we conclude Watkins's appeal should be dismissed, we need not reach the issue.

[7] The motion for class certification was filed on September 25, 2005. On October 26, 2005, Watkins sought leave to file her fifth amended complaint. On October 31, 2005, Wachovia stipulated to the filing of the fifth amended complaint, on the basis that the motion for class certification "was drafted as if the proposed Fifth Amended Complaint was the operative pleading." On appeal, the parties dispute whether Brown, who was added by the fifth amended complaint, can be considered a movant on the motion for class certification, which had been filed one month before she had been added as a named plaintiff. As we conclude summary judgment was appropriately granted with respect to Brown, we need not reach the issue.

[8] In her fifth amended complaint, Watkins "clarifi[ed]" the class definition as including two subclasses, nonregistered employees and registered employees. Wachovia moved to strike all references to registered employees from the complaint.

benefitted by a class, but they don't want to advance their own individual claim." The court expressed concern as to why a class action should proceed when there is no individual who believes he or she has been sufficiently harmed to warrant pursuing the claim.[9]

While briefing proceeded on the class certification motion, Wachovia filed its motion for summary judgment with respect to Brown. Wachovia based its motion on the fact that, when Brown's employment was terminated, she signed a release of all claims, known or unknown, specifically including wage claims, in exchange for enhanced severance benefits. In opposition, Brown conceded that she had signed the release and received the enhanced benefits. However, she argued that the release was unenforceable under Labor Code section 206.5, which prohibits employers from requiring their employees to release claims for wages due unless payment of those wages has been made. Brown took the position that this statute invalidates *any* releases of claims for unpaid wages. In reply, Wachovia argued that the statute is not violated when payment is made for all wages concededly owed and the release is of a claim subject to a bona fide dispute.

The motion for summary judgment and the motion for class certification were argued simultaneously. Rulings were issued in April 2007. The trial court granted the motion for summary judgment with respect to Brown, on the basis that Labor Code section 206.5 does not prohibit the release of disputed claims, and evidence which established Brown was aware of her overtime claim at the time she signed the release. The court was also persuaded by the fact that Brown was not *required* to sign the release in any way; she could have chosen to forgo the enhanced severance benefits and retain her overtime claim, and still would have received all wages concededly due and regular severance benefits. The court also denied the motion for class certification, relying primarily on its conclusion that common issues do not predominate, given evidence establishing that overtime practices varied among Wachovia's California branches.

On May 1, 2007, Watkins and Wachovia placed a settlement on the record in open court; the agreement was later reduced to writing. Pursuant to the agreement, Wachovia was to pay $51,000—comprised of a $2,500 payment to Watkins for her alleged lost wages; and $48,500 for her emotional distress

---

[9] Eventually, plaintiffs' counsel did find a registered sales assistant who sought to become his client. On September 21, 2006, plaintiffs sought leave to file a sixth amended complaint to add Wendy Moore, who had been employed as both a nonregistered and registered sales assistant, as a class representative. Plaintiffs also sought to add language to the complaint limiting the class to nonregistered sales assistants and noting plaintiffs' intention to appeal the trial court's rulings to the contrary. Leave to amend was denied. Plaintiffs challenge this ruling on appeal; as summary judgment was properly granted with respect to Brown, and Watkins's appeal should be dismissed, we need not reach the issue.

and attorney fees. In exchange, Watkins would release all of her individual claims, but not her right to assert claims on behalf of the class. The settlement of individual claims was not limited to Watkins's claims for wrongful termination, but also encompassed her overtime claims. Watkins agreed that, if the class action was ultimately successful, she would not be entitled to any class recovery.[10] Watkins also agreed never again to seek or obtain employment with Wachovia.

Judgment was entered in favor of Wachovia and against Brown on May 23, 2007. On June 18, 2007, Brown and Watkins filed a notice of appeal. On September 21, 2007, Watkins dismissed her individual claims with prejudice. On December 23, 2008, while the appeal was pending, Wachovia moved to dismiss the appeal, on the basis that Watkins's settlement of her individual claims deprives her of standing to pursue the class claims regardless of any language in the settlement agreement to the contrary. We indicated that the motion would be heard simultaneously with the appeal.

## ISSUES PRESENTED

We first consider Brown's appeal from the summary judgment. We conclude that the release executed by Brown is enforceable and defeats her claim; therefore, we affirm the judgment against Brown. We next consider Wachovia's motion to dismiss with respect to Watkins. We conclude that the settlement of Watkins's claims deprives her of standing to represent the class; therefore, we dismiss Watkins's appeal.

## DISCUSSION

1. *Summary Judgment Against Brown*

" 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The pleadings define the issues to be considered on a motion for summary judgment. (*Sadlier* v. *Superior Court* (1986) 184 Cal.App.3d 1050, 1055 [229 Cal.Rptr. 374].) As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense. Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of fact. (*AARTS*

---

[10] Under the oral presentation of the agreement in open court, Watkins retained the right to obtain an otherwise undefined "enhancement payment" if the class action were ultimately successful. This term, however, was not written in the settlement agreement when it was reduced to writing.

*Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064–1065 [225 Cal.Rptr. 203].)" (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252 [38 Cal.Rptr.2d 65].) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) We review orders granting or denying a summary judgment motion de novo. (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72 [41 Cal.Rptr.2d 404]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].) We exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].)

In this case, it is undisputed that Brown executed a release of all claims against Wachovia in exchange for enhanced severance benefits, and that Brown received the enhanced severance benefits. It is also undisputed that Brown received all pay that was concededly due her, and that she would have received that pay, and standard severance benefits, had she not executed the release. The sole issue raised by Brown's appeal is whether the release is unenforceable as violative of the law.

Labor Code section 206.5, subdivision (a) provides, in pertinent part, "An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee." Brown argues that this statute prohibits the release of *any* claim for unpaid wages unless payment in full of *all* claimed wages is made. In contrast, Wachovia argues that Labor Code section 206.5 should not be read independently, but in connection with Labor Code section 206. Subdivision (a) of Labor Code section 206 provides, "In case of a dispute over wages, the employer shall pay, without condition . . . all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed." Wachovia argues that, reading the two statutes together, Labor Code section 206.5 does not prevent the settlement of wage claims, but simply prevents an employer from withholding wages *concededly* due in order to coerce a settlement of the disputed amount.

Recent authority has rejected Brown's argument and adopted Wachovia's, concluding that Labor Code section 206.5 is to be read in light

of Labor Code section 206. (*Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796 [90 Cal.Rptr.3d 175].) Analyzing the legislative history of Labor Code section 206.5, prior authority interpreting both statutes, and federal cases, Division Three of the Fourth District concluded that Labor Code section 206.5 simply prohibits employers from coercing settlements by withholding wages concededly due. In other words, wages are not considered "due" and unreleasable under Labor Code section 206.5, unless they are required to be paid under Labor Code section 206. When a bona fide dispute exists, the disputed amounts are not "due," and the bona fide dispute can be voluntarily settled with a release and a payment—even if the payment is for an amount less than the total wages claimed by the employee. (171 Cal.App.4th 796.)

As such, we need consider only whether a bona fide dispute existed when Brown signed the release. The evidence[11] indisputably establishes that one did. Brown submitted a declaration indicating that she had been told to work off the clock if she had not finished her work within her scheduled eight-hour workday. Brown also submitted her deposition testimony reflecting that, while she was employed by Wachovia, she kept *separate* timesheets, with one set reflecting the time she reported to Wachovia and the second set reflecting the time she actually worked. Brown testified that she did this "to account for the fact that [she] was working all these hours and overtime and . . . wasn't getting compensated for it." Brown also testified that she had complained to management about not being paid overtime. At one point, a manager told her that her brokers would have to compensate her for her overtime work, although she did not then obtain payment from her brokers. There is no evidence to the contrary; when Brown signed the release of all claims, including wage claims, she believed that she was entitled to additional overtime compensation. In other words, when Brown's employment was terminated, she (1) received all wages Wachovia conceded were due to her (based on the timesheets she had submitted); (2) believed she possessed a claim for further overtime pay; and (3) voluntarily elected to receive enhanced severance benefits in exchange for releasing her claims against Wachovia. Under these circumstances, the release is enforceable.[12] Summary judgment was therefore appropriately granted.

---

[11] On appeal, Brown notes that some of the relevant evidence before the trial court was submitted in connection with the motion for class certification, rather than the motion for summary judgment. As the motions were heard simultaneously, and the key evidence was submitted by Brown herself, it would be an improper elevation of form over substance to reject the evidence.

[12] Brown also suggests that the release is unenforceable as a violation of Civil Code section 1668, which prohibits contracts "which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent." But this provision is meant to prohibit contracts releasing liability for *future* torts (*City of Santa Barbara v. Superior Court*

## 2. *Motion to Dismiss Watkins's Appeal*

After Watkins's motion for class certification was denied, she entered into a voluntary settlement of her individual claims, purporting to retain the right to pursue her appeal with respect to the class claims. In light of this settlement, Wachovia has moved to dismiss the appeal as moot.

■ We begin with the premise that courts will not render opinions on moot questions. (*Larner v. Los Angeles Doctors Hospital Associates, LP* (2008) 168 Cal.App.4th 1291, 1296 [86 Cal.Rptr.3d 324].) When the parties to a case have settled their underlying dispute, dismissal of the appeal as moot is appropriate because the settlement moots the issues on appeal. (*Id.* at pp. 1296–1297.) This is true even when the parties' agreement purports to preserve the right to appeal. The parties cannot, by agreement, give this court jurisdiction to hear an otherwise moot appeal. (*Id.* at pp. 1297–1298.) We therefore must consider whether Watkins's settlement of her individual claims rendered this appeal moot, regardless of any stated intention of the parties to preserve Watkins's right to pursue her representative claims.

■ This much is clear: Watkins settled her wage claim. Watkins did not simply settle her individual wrongful termination claim, leaving her wage claim—which was asserted as a class action—untouched. Instead, she settled her wage claim and agreed that, if the class was somehow ultimately successful in obtaining relief, she would not be entitled to participate in that relief. Watkins assumes, however, that her "class claim" for unpaid overtime wages has independent vitality and can continue after she has settled her "individual claim" for the same wages. The argument reflects a misunderstanding of the nature of a class action. A class action is a procedural device used "when the parties are numerous, and it is impracticable to bring them all before the court." (Code Civ. Proc., § 382.) In such a situation, "one or more may sue or defend for the benefit of all." (*Ibid.*) When a plaintiff brings a class action, the plaintiff undertakes a fiduciary duty to the other members of

---

(2007) 41 Cal.4th 747, 754–755 [62 Cal.Rptr.3d 527, 161 P.3d 1095]), not to prohibit settlements of disputes relating to past conduct. In her reply brief on appeal, Brown argues that "However, the California Supreme Court has ruled that this statute also prohibits efforts to immunize an employer from liability for wrongdoing that has already taken place," and cites *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 162–163 [30 Cal.Rptr.3d 76, 113 P.3d 1100] for the proposition. This argument is a mischaracterization of the *Discover Bank* case, which was, instead, concerned with a class arbitration waiver in a consumer contract between a bank and its cardholders. In that case, the value of the individual cardholders' claims was so small, no individual arbitration would be worth the effort. The court concluded that, in this context, the class arbitration waiver constituted a virtual license for the bank to intentionally deprive its cardmembers of small sums of money, and was therefore a prohibited contract exempting the bank from responsibility for its own intentional wrongdoing. (*Id.* at pp. 161–163.) In short, nothing in *Discover Bank* interprets Civil Code section 1668 as prohibiting contracts releasing liability for past wrongdoing.

the class, under which the plaintiff agrees not to settle the other class members' claims for the plaintiff's individual gain. (*La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871 [97 Cal.Rptr. 849, 489 P.2d 1113].) But this *duty* should not be confused with an additional *claim for relief*. A representative plaintiff still possesses only a single claim for relief—the plaintiff's own. That the plaintiff has undertaken to also sue "for the benefit of all" does not mean that the plaintiff has somehow obtained a "class claim" for relief that can be asserted independent of the plaintiff's own claim. "[T]he right of a litigant to employ [class action procedure] is a procedural right only, ancillary to the litigation of substantive claims. Should these substantive claims become moot . . . , by settlement of all personal claims for example, the court retains no jurisdiction over the controversy of the individual plaintiffs." (*Deposit Guaranty Nat. Bank v. Roper* (1980) 445 U.S. 326, 332 [63 L.Ed.2d 427, 100 S.Ct. 1166] (*Roper*).)[13] Thus, a class representative's voluntary settlement of her individual claim constitutes a voluntary settlement of her *only* claim, and moots her right to proceed on appeal.

This area of the law, however, has become muddied by cases presenting the factual scenario of an *involuntary* resolution of the representative plaintiff's claim. These cases arise when, prior to class certification, a defendant in a proposed class action gives the named plaintiff the entirety of the relief claimed by that individual. The defendant then attempts to obtain dismissal of the action, on the basis that the named plaintiff can no longer pursue a class action, as the named plaintiff is no longer a member of the class the plaintiff sought to represent.[14] The cases are sometimes referred to as "pick off" cases, as the defendant seeks to avoid exposure to the class action by "picking off" the named plaintiff, sometimes by picking off named plaintiffs serially. (See *Roper, supra,* 445 U.S. 326; *Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582 [200 Cal.Rptr. 38, 676 P.2d 1060], disapproved on another ground in *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 643, fn. 3 [88 Cal.Rptr.3d 859, 200 P.3d 295]; *La Sala v.*

---

[13] On the same day the United States Supreme Court decided *Roper*, it stated, in a companion case, that a "plaintiff who brings a class action presents two separate issues for judicial resolution. One is the claim on the merits; the other is the claim that he is entitled to represent a class." (*United States Parole Comm'n v. Geraghty* (1980) 445 U.S. 388, 402 [63 L.Ed.2d 479, 100 S.Ct. 1202].) The fact that the class action plaintiff brings "two . . . issues for judicial resolution" does not mean that the ancillary procedural claim exists independently of the substantive claim. (*Ibid.*)

[14] A named plaintiff must be a member of the class the plaintiff seeks to represent. (*First American Title Ins. Co. v. Superior Court* (2007) 146 Cal.App.4th 1564, 1573 [53 Cal.Rptr.3d 734].)

*American Sav. & Loan Assn., supra,* 5 Cal.3d 864.)[15] The "pick off" cases present the issue of whether an individual plaintiff who has been involuntarily granted relief *necessarily* no longer possesses enough of an interest to continue to pursue the class action. Courts have concluded that the involuntary receipt of relief does not, of itself, prevent the class plaintiff from continuing as a class representative.[16] (*Roper, supra,* 445 U.S. at pp. 332–333; *Kagan v. Gibraltar Sav. & Loan Assn., supra,* 35 Cal.3d at p. 595; *La Sala v. American Sav. & Loan Assn., supra,* 5 Cal.3d at pp. 871–872.)

In determining whether a class plaintiff in an involuntary "pick off" case may still proceed as a class representative, the courts look at whether the plaintiff still possesses an economic interest in class certification. In *Roper, supra,* 445 U.S. at pages 327–328, the Supreme Court was concerned with a case in which the named plaintiffs sought to bring a class action against a bank for usurious finance charges made against their credit card accounts. After the motion for class certification was denied, the bank then tendered to the named plaintiffs the maximum amount they could have recovered— amounts less than $1,000 each. (*Id.* at pp. 329–330.) The named plaintiffs declined the offer, but the trial court entered judgment in their favor and dismissed the action. (*Id.* at p. 330.) The United States Supreme Court concluded that the plaintiffs could nonetheless pursue their appeal as long "as they retained an economic interest in class certification." (*Id.* at pp. 332–333.) The court concluded that they had such an interest in "their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails." (*Id.* at pp. 336, 338, fn. 9.)

Several federal cases have applied *Roper* in the context of a representative plaintiff who has *voluntarily* settled, concluding that such a plaintiff could nonetheless proceed with an appeal of an adverse class certification ruling if the plaintiff had reserved the right to shift attorney fees to other class members. Some cases have reached this conclusion on the basis that there is no difference between a voluntary settlement and an involuntary pick off. (E.g., *Richards v. Delta Air Lines, Inc.* (D.C. Cir. 2006) 372 U.S. App.D.C. 53 [453 F.3d 525, 529].) Other federal cases have acknowledged a difference between a voluntary settlement and an involuntary pick off, but have nonetheless applied the standard of *Roper.* (E.g., *Potter v. Norwest Mortg., Inc.*

---

[15] See also Civil Code section 1782, subdivision (c), which prohibits the defendant in a Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) class action from picking off the representative plaintiff with a prelitigation offer of relief; the relief must be granted to the entire class.

[16] Further, the courts have held that *if* the picked-off plaintiff is determined to no longer be an adequate class representative, the plaintiff must be given an opportunity to amend or find another, more representative, plaintiff. (*Kagan v. Gibraltar Sav. & Loan Assn., supra,* 35 Cal.3d at p. 596; *La Sala v. American Sav. & Loan Assn., supra,* 5 Cal.3d at p. 872.)

(8th Cir. 2003) 329 F.3d 608, 612–614.) This is so even though the Supreme Court acknowledged, in the companion case to *Roper*, that it "intimate[d] no view as to whether a named plaintiff who settles the individual claim after denial of class certification may . . . appeal from the adverse ruling on class certification." (*United States Parole Comm'n v. Geraghty, supra*, 445 U.S. at p. 404, fn. 10.)

■ Relying on such federal cases, Division One of the Second Appellate District concluded that the issue of whether a representative plaintiff who had *voluntarily settled* could nonetheless proceed with an appeal of an adverse class certification ruling similarly depended on whether the plaintiff had reserved a right to shift attorney fees to other class members. (*Larner v. Los Angeles Doctors Hospital Associates, LP, supra*, 168 Cal.App.4th at pp. 1300–1304.) We believe that it is illogical to import the law governing "pick off" cases into the context of a voluntary settlement. Often, a plaintiff brings an action as a class action precisely because the attorney fees involved in bringing the action individually would exceed the value of any judgment the plaintiff could obtain individually. (*Roper, supra*, 445 U.S. at p. 338, fn. 9.) In such a situation, a "pick off" settlement, which gives the plaintiff only the relatively small amount sought as damages, may be inadequate to cover the substantial attorney fees incurred in pursuing the litigation. Thus, the plaintiff who has been involuntarily picked off has not obtained satisfactory relief, and is therefore permitted to continue pursuing the class litigation until complete relief is received. This conclusion is supported by policy considerations that seek to prevent a defendant from avoiding class liability by picking off individual plaintiffs. This is to be distinguished from the case of a voluntarily settling plaintiff. In such a case, the plaintiff has accepted an amount the plaintiff believes is sufficient to make the plaintiff whole. By voluntarily settling, the plaintiff has agreed to accept the offered sum in full satisfaction of the plaintiff's claim against the defendant. There are no public policy interests implicated by a settlement voluntarily accepted.

■ We also find noteworthy the fact that, in federal court, the denial of a motion for class certification is not immediately appealable (*Roper, supra*, 445 U.S. at p. 329), while in California, it is (*Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1547 [78 Cal.Rptr.3d 666]). Thus, in federal court, when a representative plaintiff loses a class certification motion, the plaintiff cannot appeal the trial court's decision, even though the action is not, from an economic standpoint, worth pursuing if it must be pursued as an individual action. In such a case, the plaintiff might voluntarily enter into a settlement agreement in order "to present the certification [denial] to the Court of Appeals without further expending [the parties'] resources or the district court's." (*Potter v. Norwest Mortg., Inc., supra*, 329 F.3d at p. 610.) Such a plaintiff is not fully satisfied by the settlement; indeed, the plaintiff would not be satisfied without a class recovery that would enable

the plaintiff to share the responsibility for attorney fees among the class; but the plaintiff is required to settle in order to obtain appellate review and revitalize the class action. In contrast, California law, which permits the immediate appeal of an order denying certification, does not force a representative plaintiff into a position where the plaintiff must enter into an unsatisfactory settlement in order to obtain appellate review. A representative plaintiff can immediately appeal the denial of a class certification motion without first resolving the plaintiff's individual claim. In short, a representative plaintiff in federal court who settles after the denial of class certification is still desirous of pursuing the class action to a favorable award and the sharing of the attorney fee obligation among the successful class—and simply settles the individual claim in *pursuit* of an appeal that could keep the class action alive; while a representative plaintiff in California who settles after the denial of a class certification motion has decided to take the money and depart the action, even when, as in this case, the plaintiff has nominally expressed an interest in continuing to pursue the class action.

■ A voluntarily settling plaintiff no longer has any interest in the action; if the class is ultimately certified and obtains a recovery, the settling plaintiff *cannot* share in it, having already received complete recovery. Whether the settling plaintiff asserts a hypothetical interest in having the plaintiff's already incurred attorney fees paid out of a future judgment or settlement fund is irrelevant. We cannot conceive of a situation in which a court would enter a judgment, or approve as reasonable a settlement, in which a portion of the class recovery is given to an individual who has already settled and is not a member of the class.

■ Applied to this case, it is apparent that Watkins's appeal must be dismissed. She has voluntarily released her wage claim against Wachovia in exchange for a $51,000 payment. While she attempted to reserve her right to pursue her "class claim," her "class claim" is simply a procedural device by which she pursued her substantive claim for overtime wages. Having settled her substantive claim, the class claim disappears, and her appeal of the denial of class certification must be dismissed. Watkins cannot salvage her right to appeal by asserting an economic interest in class certification in terms of a right to shift her attorney fees to the class, if successful. If the class obtains a judgment or settlement, such recovery would belong to the class. Having voluntarily settled, she is, by her own choice, no longer a member of the class and cannot share in any such recovery.[17]

---

[17] Similarly irrelevant is Watkins's claim that she retains an economic interest in the pursuit of the class action because, if the class is successful, she may be entitled to an "enhancement payment"—presumably a payment made from the class recovery to the named plaintiff as

## *DISPOSITION*

The judgment against Brown is affirmed. The appeal of Watkins is dismissed. Wachovia is to recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 24, 2009, S173181. Chin, J., did not participate therein.

---

compensation for the additional risks taken by the named plaintiff in pursuing the action. As Watkins has voluntarily settled, there would be no legal basis for her to share in the class recovery.